**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| COOK INLETKEEPER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>*Defendants*,<br><br>and<br><br>STATE OF ALASKA,<br><br>*Intervenor-Defendant*. | Case No. 3:22-cv-00279-SLG |

**DECLARATION OF BRENDAN CUMMING**

I, Brendan Cummings, declare as follows:

1. I have personal knowledge of the following, and I could and would competently testify to these matters if called as a witness.

2. I have been on staff at the Center for Biological Diversity (the Center) for more than 20 years and currently serve as Conservation Director for the organization. I am also a member of the Center. The Center's members and staff, including myself, rely on the Center to represent our interests in the preservation of imperiled species and habitats such as those in Cook Inlet, Alaska.

3. I work with our legal and scientific staff and other organizations to advance the Center's goals of wildlife and habitat protection, using administrative actions,

scientific research, and the judicial process to this end. In my capacity at the Center, I am familiar with the Center's activities and organizational interests related to Alaska in general and Cook Inlet in particular.

4. The Center is a nonprofit organization incorporated in the State of California. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats throughout the United States and abroad.

5. The Center has more than 89,000 active members. Center members reside throughout the United States, including Alaska, as well as other countries. The Center works to ensure the long-term health and viability of animal and plant communities across the United States and elsewhere, and to protect the habitat these species need to survive. The Center believes the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked.

6. As part of our mission, the Center provides oversight of governmental programs, policies, and activities that affect wildlife and endangered species. The Center has been at the forefront of efforts to hold the government accountable for its obligations under the National Environmental Policy Act (NEPA) and other conservation laws. The Center regularly engages in efforts and campaigns to ensure our nation's environmental laws are enforced.

7. The Center produces a wide array of educational and informational materials concerning the status of and threats to wildlife species, including threatened and endangered species and their habitats in Alasa. These materials are disseminated to the Center's members; policymakers; local, state, federal and international governmental officials; nonprofit organizations; and interested members of the public.

8. The Center has been actively involved in protecting Alaska's wildlife since the early 1990s. Our involvement includes submitting Endangered Species Act (ESA) listing petitions for the Cook Inlet beluga whale; Queen Charlotte goshawk; Alexander Archipelago wolf; Aleutian sea otter; yellow-billed loon; Kittlitz's murrelet; polar bear; Pacific walruses; cold water corals; and bearded, ringed, ribbon, spotted seals, and Lake Iliamna seals. We have also submitted ESA petitions seeking critical habitat designations for bowhead whales and North Pacific right whales. Additionally, we have submitted petitions seeking special protections under the Marine Mammal Protection Act (MMPA) for Alaskan sea otters and the AT1 population of killer whales.

9. Besides our administrative petitions, the Center has engaged in numerous other actions related to the protection of biodiversity and habitat in Alaska, such as submitting comments, appeals, and/or litigation on forest plans, timber sales, oil and gas leasing and projects, fisheries management, and other environmentally damaging activities. In sum, the Center has a significant history of advocacy and involvement in

environmental issues affecting Alaska species. Our current involvement on issues affecting Cook Inlet falls squarely within our organizational interests and mission.

10. The Center has worked to protect Cook Inlet beluga whales for more than two decades. In 1999, the Center filed a petition with the National Marine Fisheries Service (NMFS) to list Cook Inlet belugas as endangered under the ESA. Since then, we have worked continuously to obtain full protection for this population of belugas under both the ESA and MMPA. Our efforts include filing two separate lawsuits and a second ESA petition, which culminated with NMFS's 2008 decision to list the Cook Inlet beluga whale as an endangered species. When NMFS failed to designate critical habitat under the ESA, the Center again filed a notice of intent to sue, and NMFS subsequently designated more than 3,000 square miles of Cook Inlet as critical habitat for the endangered whale in 2011. In doing so, NMFS recognized just how important the use of sound is to this population's communication, feeding, navigation, and breeding, especially in the highly turbid waters of Cook Inlet. It designated as one of five critical features to the population's conservation the existence of noise levels in the water below those resulting in abandonment of critical habitat. In 2010 the Center intervened in the State of Alaska's lawsuit challenging the beluga's ESA listing; in 2011 a federal court upheld that listing. The Center has also engaged in longstanding efforts to protect Cook Inlet beluga whales from water and noise pollution; vessel strikes; risks of offshore oil drilling activities and spills; and other threats to protect these interests in Cook Inlet

beluga whales. This includes commenting on and ultimately challenging in court various MMPA incidental take authorizations that allowed oil and gas activities to disturb Cook Inlet belugas.

11. The Center has invested substantial organizational resources into ongoing research and public education regarding the plight of species that reside in and use Cook Inlet. For example, the Center maintains an active website and quarterly newsletter, and we have highlighted threats to Cook Inlet to our members and the public numerous times.

12. The Bureau of Energy Management's (Bureau) approval of Lease Sale 258 threatens to disrupt the Cook Inlet beluga whale's essential behaviors and hasten its decline in many ways. In its decision, the Bureau opted to open nearly a million acres to offshore oil and gas drilling in federal waters of Cook Inlet, which threatens severe impacts to belugas from noise pollution, vessel strikes, prey reduction, and oil spills. This undermines the Center's efforts to secure legal protections for Cook Inlet belugas, and it also threatens our members' interests in the species' survival and recovery.

13. Additionally, Lease Sale 258 would counter the Center's work to reduce carbon emissions and protect Alaskan species from related climate impacts. The Center's work to reduce these impacts not only includes a great deal of resources invested to prevent harmful oil and gas exploration and development in Cook Inlet, but also the Chukchi Sea, Beaufort Sea, and beyond. The Bureau acknowledges that Lease Sale 258 will increase global carbon emissions, which will further negative impacts to native

species and human health and undermine the Center's efforts to transition our nation off fossil fuels and to renewable energy.

14. The Bureau acknowledged marine mammals may be impacted from Lease Sale 258, but never did it give these effects a hard look or examine a reasonable range of alternatives, thwarting the Center's work and undermining substantial organizational investments the Center has made to protect species like the Cook Inlet beluga whale and our climate.

15. In short, the Center has strong organizational interests in the species and habitats of Cook Inlet and the proper and lawful management of these waters. In advocating for these interests, the Center represents itself and its members. Center members have visited and will continue to visit Cook Inlet and its shores for recreational, aesthetic, and educational purposes, including hiking, fishing, wildlife watching, and photography. Center members rely on the Center to represent their interests and advocate on behalf of the species and habitats of Cook Inlet. Our members both in and outside of Alaska have educational, moral, spiritual, scientific, professional, ecological, aesthetic, and/or recreational interests in Cook Inlet belugas, other wildlife in the Inlet, and their habitats.

16. Lease Sale 258 would irreversibly harm the Center's members' use and enjoyment of Cook Inlet and the species that rely on it, including Cook Inlet beluga whales, Eastern Pacific gray whales, Northeastern Pacific fin whales, Alaska minke

whales, Western North Pacific humpback whales, Alaska Resident killer whales, Alaska Transient killer whales, Gulf of Alaska harbor porpoise, Alaska Dall's porpoise, Western Steller sea lion, and Cook Inlet/Shelikof harbor seals.

17. Center members' interests in viewing wildlife and enjoying untrammeled landscapes would be harmed by Lease Sale 258. More offshore oil and gas leasing and drilling activity will destroy important habitat and disturb species such as Cook Inlet beluga whales that are already imperiled by vessel noise, other disturbance from offshore oil and gas development, and the cumulative impacts of multiple stressors. The Center's efforts to protect Cook Inlet beluga whales and other Cook Inlet species would all be for naught in the event of one large oil spill, which NMFS has recognized as one of the biggest threats to Cook Inlet beluga whales (in addition to noise and cumulative impacts).

18. The harm to the Center and our members is directly traceable to Defendants' actions at issue in this case. If the Bureau had complied with NEPA, it could have adopted additional mitigation measures or alternatives that would better protect endangered Cook Inlet belugas and their habitat, and thereby better protecting the Center and our members' interests. A ruling setting aside this illegal and unwise approval will protect the Center and our members' interests.

19. The Center and its members not only have an interest in the physical and biological resources of Cook Inlet, but also in the rule of law—the expectation that federal agencies such as the Bureau will comply with the substantive and procedural

mandates of NEPA that guarantee an informed public and informed decision-making. The deficiencies in the Bureau's Environmental Impact Statement and related documents—and its failure to provide for proper public review—harm these procedural interests of the Center and its members. Again, a ruling setting aside these illegal and inadequate documents and decisions will protect the Center and our members' interests.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 20th, 2023

________________________________

Brendan Cummings