TREG TAYLOR
ATTORNEY GENERAL
Mary Hunter Gramling
Chief Assistant Attorney General
Alaska Bar No. 1011078
Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2417
Email: *mary.gramling@alaska.gov*
Attorney for the State of Alaska

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| COOK INLETKEEPER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>Defendants.<br>and<br><br>STATE OF ALASKA<br><br>Intervenor-Defendant. | ) | Case No.: 3:22-cv-00279-SLG |

**STATE OF ALASKA OPPOSITION BRIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................3

INTRODUCTION ........................................................................5

FACTS AND LEGAL BACKGROUND ........................................................................6

- I. The State urged against excluding lease blocks in the 2017 ROD for Lease Sale 258. ........................................................................6
- II. The State commented on the Draft EIS for Lease Sale 258 and opposed cancellation. ........................................................................7
- III. Congress mandated Lease Sale 258 in the Inflation Reduction Act. .........9
- IV. BOEM conducts Lease Sale 258 and Alaska comments and intervenes in this case. ........................................................................11

STANDARD OF REVIEW ........................................................................12

ARGUMENT ........................................................................14

- I. BOEM cannot be in violation of NEPA because the challenged FEIS and ROD were not required under NEPA. ......................................14
- II. Alternatively, the FEIS and ROD for Lease Sale 258 complied with NEPA. ........................................................................19
- III. Significant public policy mandates against vacatur. ................................20

CONCLUSION ........................................................................22

## TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*,
988 F.2d 146 (D.C.Cir. 1993). ....................21

*Audubon Society of Portland v. Haaland*, 40 F.4th 967 (9th Cir. 2022). ..........19, 20

*Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989 (9th Cir. 2012). ..............20

*Dep't of Transp. v. Public Citizen*, 541 U.S. 752 (2004) ....................14, 18

*Friends of the Earth v. Haaland*, 2023 WL 3144203
(D.C. Cir. Apr. 28, 2023) ....................10, 15, 17

*Louisiana v. Biden*, 622 F.Supp.3d 267 (W.D. La. 2022) ....................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ....................13

*Native Vill. of Chickaloon v. NMFS*, 947 F.Supp.2d 1031 (D.Alaska 2013) .........13

*Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123 (9th Cir. 2012) ..................13

*Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2005) ....13

*Oregon Nat. Res. Council, Inc. v. Bureau of Reclamation*,
37 F.3d 1414 (9th Cir. 1994) ....................18

*The Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) ....................14

**Statutes**

Alaska Const. Art. 8 ....................6

5 U.S.C. §§ 701-706 ....................12

5 U.S.C. §706(2)(A) ....................13

NEPA, 42 U.S.C. § 4321 *et. seq* ....................*passim*

OCSLA, 43 U.S.C. § 1331 *et seq.* ....................................................................*passim*

43 U.S.C. § 1337(a)(1) ....................................................................10

43 U.S.C. § 1344(e) ....................................................................15

Inflation Reduction Act of 2022,
Pub. L. No. 117-169, 136 Stat 1818 (Aug. 16, 2022) ..............................*passim*

§ 50261 ....................................................................10

§ 50264 ....................................................................15

§ 50264(a) ....................................................................10

§ 50264(a)(2) ....................................................................10

§ 50264(b) ....................................................................10

§ 50264(c). ....................................................................10

§ 50264(d) ....................................................................10

§ 50264(e) ....................................................................10

§ 50265 ....................................................................11

**Regulations**

30 C.F.R. § 556.305. ....................................................................17

40 C.F.R § 1508.1(q)(1)(ii) ....................................................................17, 18

**Other Authorities**

E.O. 140008, Tackling the Climate Crisis at Home and Abroad, 86 Fed. Reg 7,619, 7,624 (Jan. 27, 2021). ....................................................................8

## INTRODUCTION

Following from years of litigation, uncertainty, and harmful delays of offshore oil and gas leasing, Congress unequivocally interceded with the Inflation Reduction Act ("IRA") in 2022 and mandated that the U.S. Department of Interior ("DOI") conduct specific offshore oil and gas lease sales. This case concerns one of the specifically mandated lease sales, Lease Sale 258 for the Alaska Outer Continental Shelf Cook Inlet Planning Area. The Plaintiffs (collectively "Inletkeepers") challenge the U.S. Bureau of Ocean Energy Management's ("BOEM") Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD") for Lease Sale 258 under the National Environmental Policy Act ("NEPA") and request remand and vacatur of the FEIS, ROD, and lease issued from the sale. Dkt. 37 (Pls. Br.).

The FEIS was not required under NEPA because BOEM lacked discretion on Lease Sale 258. Accordingly, Inletkeepers' claims that FEIS and ROD violated NEPA must be dismissed. Alternatively, BOEM fully complied with NEPA. Finally, the alternatives and vacatur remedy suggested by Inletkeepers would be contrary to explicit statutory direction and frustrate the purposes of the IRA. The Court should deny Inletkeepers' claims and enter summary judgment in favor of the Federal Defendants and the State.

## FACTUAL AND LEGAL BACKGROUND

To avoid duplication in briefing, the State generally agrees with the Federal Defendants' description of the legal background for the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.,* and NEPA, 42 U.S.C. § 4321 *et. seq*., such that the State's brief will not include separate legal background descriptions of those laws. Dkt. 40 at 11-14.

### I. The State urged against excluding lease blocks in the 2017 ROD for Lease Sale 258.

The State has been a steadfast proponent of Lease Sale 258. The State is an affected state for the purposes of the OCSLA. 43 U.S.C. § 1331 *et seq*. The State has constitutional duties for responsible development and has as much coastline as the rest of the nation combined. Alaska Const. Art. 8. On January 17, 2017, DOI issued the ROD for the 2017-2022 Outer Continental Shelf Oil and Gas Leasing Program (2017 ROD). AR0001208-10. The 2017 ROD incorporated by reference the schedule for the Proposed Final Program ("PFP"). AR0001208. Lease Sale 258 for the Cook Inlet Program Area was to occur in 2021. AR001210, AR001121. The PFP considered four options for the Cook Inlet Program Area: Option 1, the northern portion of the program area; Option 2, "Option 1 with exclusion of the Cook Inlet Whale Critical Habitat Environmentally Important Area within the Cook Inlet Program Area; Option 3, No sale; and Option 4, Other." AR001121.


Case 3:22-cv-00279-SLG Document 44 Filed 12/28/23 Page 6 of 24

During the comment period for the 2017-2022 Leasing Program, the State "reiterated [its] opposition to a regionally tailored, targeted leasing strategy, instead of an area-wide approach" including "opposition to the removal of Environmentally Important Areas" because mechanisms such as Conflict Avoidance Agreements to mitigation potential impacts were already in place. AR00156. The 2017 ROD "directed BOEM to analyze a seasonal restriction on seismic surveys and exploration drilling for Cook Inlet Lease Sale 258" but ultimately the ROD did not recommend exclusion of beluga whale habitat in the northernmost part of the program area. AR001209-10.

## II. The State commented on the Draft EIS for Lease Sale 258 and opposed cancellation.

In 2019, the State and BOEM entered into a Memorandum of Understanding on coordination and collaboration regarding "the development of energy and marine mineral resources in all areas of the Outer Continental Shelf (OSC) offshore Alaska." AR020415. In October 2020, the State provided BOEM with comments and technical information in response to BOEM's Notice of Intent to prepare an EIS for Lease Sale 258. AR005253. The State's comments "strongly encourage[d]" BOEM to complete lease sales. AR005253.The State explained that "with increased exploration of State submerged lands in the Cook Inlet, conducting lease sales in adjacent OCS lands in the Cook Inlet would allow interested parties


Case 3:22-cv-00279-SLG Document 44 Filed 12/28/23 Page 7 of 24

to consider exploratory programs to assess the resource prospectivity on both State submerged and adjacent federal OCS lands." AR005253. The State described that "[a]ll phases of responsible oil and gas development, including exploration, development, production, and transportation have occurred in Cook Inlet, supplied a substantial amount of the State's consumer energy, and enabled significant growth in the State's economy." AR005253.

BOEM invited public comments on the Draft EIS for Lease Sale 258 in January 2021. AR005668. Less than two weeks later, President Biden issued an executive order pausing "all oil and gas leases on public lands or in offshore waters". E.O. 140008, Tackling the Climate Crisis at Home and Abroad, 86 Fed. Reg 7,619, 7,624 (Jan. 27, 2021). BOEM cancelled the public comment period for Lease Sale 258. AR005677. The State opposed the cancellation explaining that "[c]ancelling public review for [Lease Sale 258] will not stop oil and gas development but encourage developers to seek other development opportunities, likely in countries where the rigorous environmental oversite and control employed in Alaska are not applied." AR005680-82.

The State joined with twelve other states opposing the "pause" of oil and gas leasing. *Louisiana v. Biden*, 622 F.Supp.3d 267 (W.D. La. 2022). Following an injunction against the pause, BOEM issued a new ROD for Lease Sale 257, a Gulf sale, and published a Draft EIS for Lease Sale 258. *Id.* at 279-80. The State's

comments again urged against a "no action" alternative and stressed that "natural gas produced in Cook Inlet is the primary source of both heat and electricity for most of Alaska's population, and it is critical that federal resources be made available to help meet this demand." AR020400-05. Citing a lack of individual potential bidder comments, BOEM cancelled Lease Sale 258 in May 2022 without publishing a FEIS. AR020797.

### III. Congress mandated Lease Sale 258 in the Inflation Reduction Act.

In August 2022, the Inflation Reduction Act of 2022 ("IRA") amended the OCSLA and specifically addressed Lease Sales under the 2017-2022 Outer Continental Shelf Leasing Program. Pub. L. No. 117-169, 136 Stat 1818 (Aug. 16, 2022). The IRA defined Lease Sale 258 as follows:

> LEASE SALE 258.—The term "Lease Sale 258" means the lease sale numbered 258 described in the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Proposed Final Program published on November 18, 2016, and approved by the Secretary in the Record of Decision issued on January 17, 2017, described in the notice of availability entitled "Record of Decision for the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Program Final Programmatic Environmental Impact Statement; MMAA104000" (82 Fed. Reg. 6643 (January 19, 2017)). IRA § 50264(a)(2).

In subsection (c) of that same provision, the IRA mandated the DOI conduct Lease Sale 258 as follows:

> (c) REQUIREMENT FOR LEASE SALE 258.—Notwithstanding the expiration of the 2017–2022 leasing program, not later than December 31, 2022, the Secretary shall conduct Lease Sale 258 in accordance with

> the Record of Decision approved by the Secretary on January 17, 2017, described in the notice of availability entitled "Record of Decision for the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Program Final Programmatic Environmental Impact Statement; MMAA104000" issued on January 17, 2017 (82 Fed. Reg. 6643 (January 19, 2017)). IRA § 50264(c).

Thus, Congress mandated Lease Sale 258 – ignoring the expiration of the leasing program and BOEM's decision to cancel the sale without a published FEIS. *Id*. This same section of the IRA mandated other lease sales and actions on specific timelines, irrespective of the procedural status under OCSLA or NEPA alone. DOI was directed to conduct Lease Sale 259 "not later than March 31, 2023" and Lease Sale 261 "not later than September 30, 2023." IRA § 50264(d) and (e). Lease Sale 257 that had been issued and vacated due to NEPA challenges, was nevertheless statutorily reinstated in the IRA with directives that the Secretary "shall" act within 30 days of the Act to accept bids and provide lease forms. IRA § 50264(a) & (b); *Friends of the Earth v. Haaland*, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023)(vacating and remanding challenges to the sale with instructions to dismiss as moot due to the intervening directives from the IRA requiring action in 30 days and noting the IRA required action "outside NEPA's scope.").

The IRA also amended OCSLA to provide that the oil and gas offshore royalty rate be increased from not less than 12 ½ percent to "not less than 16 ⅔ percent, but not more than 18 ¾ percent." IRA § 50261; 43 U.S.C 1337(a)(1). The

IRA provided that the "Secretary may not issue a lease for offshore wind development" under OCSLA unless offshore oil and gas lease sales had been held and the sum of the acreage "is not less than 60,000,000 acres." IRA § 50265. Inletkeepers' background section states that "[t]he IRA" invests in clean energy, cuts greenhouse gas emissions, and reduces the national deficit to curb inflation." Pls. Br. at 18. The IRA reflects Congressional compromises and mandates to fund those "clean energy" measures, like increasing royalty rates on oil and gas leasing, mandating oil and gas lease sales (specifically overriding executive discretion on them), and conditioning offshore wind leasing on minimum acreages of offshore oil and gas leasing. IRA § 50265.

## IV. BOEM conducts Lease Sale 258 and Alaska comments and intervenes in this case.

On September 20, 2022, BOEM provided notice to the Governor of the State that Lease Sale 258 was scheduled to take place on December 30, 2022. AR020824. BOEM acknowledged that "[n]ew oil and gas production from Cook Inlet OCS would help provide energy security for the State of Alaska" and that absent "new regional supplies, oil and gas will need to be imported into the region." AR020814. The State commented again discouraging exclusion of beluga whale critical habitat from leasing and expressing concern that certain stipulations were "a de facto limitation on the size of Lease Sale 258." AR021732-34. BOEM

offered 193 lease blocks for sale and excluded 17 blocks that overlapped with critical habitat. AR021819-20. The ROD in November 2022 explained "[w]hile BOEM has no discretion in whether to hold Lease Sale 258, BOEM issued the FEIS and is issuing this ROD in order to follow its normal leasing process to the fullest extent practicable." AR021776.

Inletkeepers filed its Complaint in this case before bidding opened for Lease Sale 258. Dkt. 1 (filed Dec. 21, 2022). The Complaint alleges violations of NEPA and the APA and requests vacatur of the FEIS, ROD, and leases executed under the sale. *Id*. The State submitted a declaration of the Director of the Division of Oil and Gas from the Department of Natural Resources in support of its motion to intervene. Dkt. 20 & 20-3. The Director explained that "this litigation will have a direct effect on the [State], its economic interests, and its citizens." Dkt. 20-3, Dec. Nottingham, ¶8. This Court granted the State's motion to intervene acknowledging that "the State occupies a unique role in representing the interests of its citizens and in 'vindicat[ing] its rights and interests' as a sovereign and neighboring landowner." Dkt. 28 at 5-6.

## STANDARD OF REVIEW

In this case, this Court is reviewing agency actions under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Under the APA, agency actions are upheld unless they are "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). The Court does "not vacate an agency's decision unless it relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation [for that decision] that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Native Vill. of Point Hope v. Salazar*, 680 F.3d 1123, 1129 (9th Cir. 2012)(internal quotation marks omitted). A decision of "less than ideal clarity" will be upheld "if the agency's path may be reasonably discerned." *Native Vill. of Chickaloon v. NMFS*, 947 F.Supp.2d 1031, 1049 (D.Alaska 2013)(quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co*., 463 U.S. 29, 43 (1983)).

Inletkeepers' standard of review section asserts that agencies cannot "rubber stamp" decisions inconsistent with a statutory mandate or that frustrate the congressional policy underlying the statute – implying NEPA is the policy here. Pls. Br. at 21, citing *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005). Inletkeepers' challenge is under NEPA, but its analysis fails to recognize that Lease Sale 258 due to the IRA is outside the scope of NEPA's requirements for impact statements. Accordingly, the Court should not impose procedural requirements when no such specific requirements are found in "explicitly enumerated […] pertinent statutes." *Native Vill.*, 680 F.3d at 1133-34

(quoting *The Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008)(overruled on other grounds)).

## ARGUMENT

### I. BOEM cannot be in violation of NEPA because the challenged FEIS and ROD were not required under NEPA.

In *Department of Transportation v. Public Citizen*, the Supreme Court considered whether an agency was required to provide an EIS under NEPA for promulgation of regulations relating to motor carrier safety. 541 U.S. 752 (2004). The Court explained the policies underlying NEPA and the intent of Congress were informed by a "rule of reason" such that the lack of causal connection between the regulations and entry of Mexican trucks was insufficient to make the agency responsible under NEPA to consider the environmental effects of entry of Mexican trucks. *Id.* at 768.

The Court reasoned that "[i]t would not, therefore, satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform." *Id.* at 769. The Court held "that where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect" and that under NEPA "the agency need not consider these effects in its EA when determining whether its action is a 'major Federal

action." *Id.* at 770. Here the "rule of reason" governs that the policies underlying NEPA and Congress' intent behind the IRA make the causal connection between Lease Sale 258 and the environmental effects of the Lease Sale insufficient to make the agency responsible under NEPA.

This same issue has been addressed for another lease sale mandated by the IRA. The IRA reinstated Lease Sale 257, that had been vacated due to a NEPA challenge, and mandated the Secretary "act" within a mere 30 days. IRA § 50264(a) and (b); *Friends of the Earth*, 2023 WL 3144203. Congress directed Lease Sale 258 and 259 proceed "in accordance" with the 2017 ROD and defined Lease Sale 258 as "*described* in the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Proposed Final Program published on November 18, 2016, *and approved* by the Secretary in the Record of Decision issued on January 17, 2017." IRA § 50264. The 2017 ROD approved Option 1, the northern portion of the program area, without exclusions found in Option 2 for critical habitat. AR001121. BOEM in Lease Sale 258, by excluding blocks for critical habitat and requiring restrictive lease stipulations, conducted Lease Sale 258 in such an environmentally protective manner that it already stretched the plain language of the IRA and the mandates of Congress. OCSLA requires that significant revision to a leasing program plan requires more notice and comment and consultation. 43 U.S.C. § 1344(e). The timelines and language in the IRA further foreclosed any "significant

revisions" like those advocated by Inletkeepers. Pls. Br. at 23 (suggesting that BOEM failed to consider alternatives that would "decreas[e] the lease sale area by 46 percent" and "include year-round restrictions on all seismic surveys and exploratory drilling operations north of Anchor Point.").

The IRA dictated the timing, applicable record of decision, location, and the size of Lease Sale 258. Inletkeepers point to the 2017 ROD's statement that the Secretary "has flexibility to re-evaluate the nation's energy needs and current market developments and can reduce or cancel lease offerings." Pls. Br. at 27, AR021783. The IRA directly revoked that flexibility and mandated Lease Sale 258. BOEM could not cancel, delay, re-evaluate energy needs, or even significantly reduce the area for sale due to the IRA. Even if Inletkeepers' view that the IRA only directed the timing of Lease Sale 258 is correct, the shortened time frame alone establishes that the IRA placed Lease Sale 258 outside of the scope of NEPA and its impact statement process.

The timing under the IRA for Lease Sale 258 was so short that BOEM was stretched to comply with the timings and process for lease sales contemplated under OCSLA and its regulations. The IRA was enacted on August 16, 2022. On September 20, BOEM's director explained that BOEM "must publish the [Notice of Sale], by September 23, 2022, to ensure there is sufficient time to complete the remaining steps in the leasing process and hold the sale on Friday, December 30,

2022." AR020803. The memorandum also explained that OCSLA required the Governor of the State of Alaska to have 60 days to make recommendations on the lease sale. *Id.*; 30 C.F.R. § 556.305. The ROD itself recognized that BOEM did not have discretion on the sale and "BOEM issued the FEIS and is issuing this ROD in order *to follow its normal leasing process to the fullest extent practicable*." AR021776, (emphasis added).

In the above referenced *Friends of the Earth* case, the D.C. Circuit reasoned from regulation, 40 C.F.R § 1508.1(q)(1)(ii), and the mandatory "shall" language in the IRA in regards to Lease Sale 257 that "by placing a nondiscretionary obligation on the Department to issue the leases, the Inflation Reduction Act makes clear that the issuance of the leases is no longer subject to NEPA." *Friends of the Earth*, 2023 WL 3144203 at *2. In the same vein as Lease Sale 257, the IRA for Lease Sale 258 included mandatory, non-discretionary language: that the Secretary "shall conduct Lease Sale 258." While the IRA directives for Lease Sale 257 were more descriptive and included even shorter time frames than those for Lease Sale 258 in the IRA, the difference in language reflects the fact that Lease Sale 257 already had a FEIS and the sale had already occurred. Nothing in these sections of the IRA indicate that Congress granted discretion regarding Lease Sale 258 that the D.C. Circuit found the Secretary lacked in Lease Sale 257.

Lease Sale 258 was mandated by the IRA and BOEM lacked discretion on the sale. This is significant as "agency action mandated by statute does not trigger NEPA coverage." *Oregon Nat. Res. Council, Inc. v. Bureau of Reclamation*, 37 F.3d 1414, 1417 (9th Cir. 1994), *opinion withdrawn*, 49 F.3d 1441 (9th Cir. 1995), *and superseded*, 52 F.3d 334 (9th Cir. 1995) (*Superseded on other grounds*); see, 40 C.F.R. § 1508.1(q)(ii)("Major Federal action does not include the following activities or decisions: . . . Activities or decisions that are non-discretionary and made in accordance with the agency's statutory authority").

When an agency has no discretion in whether an action occurs, NEPA purposes are not served as the agency does not have the power to act on whatever information would be in the EIS, and the participation of the public has no impact on the decision-making process as the decision has already been mandated. *See, Dep't of Transp.*, 541 U.S. at 768-769. By its mandatory language and references to the 2017 ROD, the IRA effectively declared the information gathering and public role purposes of NEPA satisfied such that any remaining discretion for BOEM was not a major Federal action to trigger a FEIS. Accordingly, Inletkeepers' NEPA claims must fail.

## II. Alternatively, the FEIS and ROD for Lease Sale 258 complied with NEPA.

Even if the IRA mandate on Lease Sale 258 did not take review of the FEIS and ROD entirely outside the scope of NEPA's impact statement requirement, the Court may still consider how the IRA and OCSLA directives reasonably cabined the analysis. Moreover, 'the rule of reason' in review of the FEIS and ROD under NEPA applies. The 'rule of reason' is a guide to review of the adequacy of the discussion of alternatives and whether discussion of environmental consequences is "sufficiently thorough." *Audubon Society of Portland v. Haaland*, 40 F.4th 967, 980 (9th Cir. 2022).

Inletkeepers argue that BOEM refused to consider alternatives that would "decrease the lease sale area by 46 percent." Pls. Br. at 23. Inletkeepers fail to explain how exclusion of such large areas from the sale would be consistent with statutes or feasible to meet the purposes of Lease Sale 258. The 2017 ROD included four options and a reduction of that magnitude would have been inconsistent with the 2017 ROD considering the mandates of the IRA and the purposes of OCSLA. As explained in the Federal Defendants briefing, to the extent that BOEM had any duty under NEPA, the FEIS and ROD adequately explained why it declined to analyze that suggested exclusion. Dkt. 40 at 28 – 31. Inletkeepers arguments regarding belugas are unavailing requests to "fly-speck."


Case 3:22-cv-00279-SLG Document 44 Filed 12/28/23 Page 19 of 24

*See, Audubon,* 40 F.4th 967, 984 (9th Cir. 2022). Lease Sale 258 contained ample protections. The FEIS and ROD for Lease Sale 258 contained thorough analysis meeting the rule of reason to survive scrutiny under NEPA.

## III. Significant public policy mandates against vacatur.

The State maintains that there has been no error in Lease Sale 258 because the FEIS and ROD were outside the scope of NEPA's requirement for impact statements and even if impact statements were required the FEIS and ROD complied with NEPA. The State submits that should this Court find any legal defect that a schedule for briefing on remedy be allowed to ensure that any remedy is narrowly tailored to address the defect and whatever injury from that defect may be demonstrated by Inletkeepers. This would also allow the Federal Defendants, the State, and potentially others with an interest in Lease Sale 258 to address the specific harms from vacatur and any remand. For example, the Federal Defendants oppose vacatur and suggested a variety of potential other remedies. Dkt. 40 at 50.

Vacatur is far from automatic as Inletkeepers suggest. Pls. Br. at 42. Vacatur is an exercise of the Court's powers in equity. *Cal. Cmtys. Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). The Court when considering whether an agency action should be vacated depends on several factors including: 1) the seriousness of the agency's error and 2) "the disruptive consequences of an interim

change that may itself be changed." *Id.* (quoting *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150-151 (D.C.Cir. 1993).

As to the first factor, Inletkeepers have not established any error as explained above. For argument assuming some error existed, it legally and factually cannot rise to the level of serious error to warrant vacatur and remand. From a legal standpoint, even if the FEIS and ROD violated some aspect of NEPA, the IRA limited BOEM's discretion and the shortened timing for any review prohibits a finding that any "error" under NEPA, a procedural statute, was "serious." The IRA accomplished the informational and public participation in decision-making goals of NEPA so there can be no "fundamental flaws." Pls. Br. at 42. From a factual standpoint, the FEIS and ROD for Lease Sale 258 were comprehensive in nature and BOEM would be able to substantiate or cure any defect. *See*, *Allied-Signal, Inc.*, 988 F.2d 150-151.

As to the second factor relating to disruptive change, vacatur would be disruptive on multiple fronts. Lease Sale 258 was the culmination of years of studies, cooperation, coordination, uncertainty, litigation, and direct Congressional action in the IRA. OCSLA itself mandates an expeditious development policy and Lease Sale 258 occurred a year later than planned. *Native Vill.*, 680 F.3d 1133-34. The IRA directly intervened on Lease Sale 258 to mandate that it occur before

December 31, 2022. It is hard to envision a more direct set of public policies for expeditious leasing that would be disrupted by vacatur.

Vacatur would also be disruptive to the State's economy and planning. As the State explained in its comments following the "halt" of Lease Sale 258, "[t]he abrupt halting of Lease Sale 258 is counterproductive to Alaska's and the United States' economic recovery, progress in domestic oil and gas industry environmental protections, and regulatory stability." AR005680. The comment also outlined the "significant efforts" from the State and other parties towards Lease Sale 258 that would be "dismissed" by the halt. The same would be true for vacatur.

Inletkeeper assumes without any factual support that no harm would follow from remand and vacatur because another Lease Sale could occur. This argument completely misses the need for regulatory stability and the cloud of disruption and uncertainty that would follow in the industry from vacatur and remand. Vacatur would negatively impact the energy goals and economies of scale that Lease Sale 258 could bring for the development on State lands. Dkt. 20-3, Dec. Nottingham, ¶8.

**CONCLUSION**

OCSLA and the IRA are important steps for energy independence and future development that could have profound impacts on the State and its

residents. For the foregoing reasons, and those presented by the Federal Defendants, Inletkeepers' complaint should be dismissed, and judgment granted for the Federal Defendants and the State.

DATED: December 28, 2023.

TREG TAYLOR
ATTORNEY GENERAL

By: *_/s/ Mary Hunter Gramling_*
Mary Hunter Gramling
Alaska Bar No. 1011078
State of Alaska
Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: mary.gramling@alaska.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains less than 35 pages excluding the parts of the brief exempted by Local Civil Rule. 7.4(a)(4). This memorandum has been prepared with proportionately spaced typeface, Times New Roman size 14 font.

*<u>/s/ Mary Hunter Gramling</u>*
Mary Hunter Gramling
Alaska Bar No. 1011078
State of Alaska
Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: mary.gramling@alaska.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2023, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

*<u>/s/ Mary Hunter Gramling</u>*
Mary Hunter Gramling
Alaska Bar No. 1011078
State of Alaska
Department of Law
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: mary.gramling@alaska.gov